# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

IN RE GRAND JURY SUBPEONA : 
2009R00030 SERVED ON : 
JANUARY 19, 2012, : 
: Case No. 1:13-cr-12 (WLS)
:
:
:

## ORDER

Before the Court is the United States' Motion to Compel Compliance with the Grand Jury Subpoena. (Doc. 81.) For the reasons that follow, the motion is **GRANTED**.

### I. Procedural and Factual Background.

This matter arises out of a grand jury investigation into Peanut Corporation of America (PCA) and its management's role in a rash of deadly salmonella poisonings. The respondent to this matter is The Hartford Insurance Company ("Hartford"). Hartford refuses to produce to the grand jury two recordings of Stewart Parnell and Danny Kilgore, both former PCA officials, on the grounds of attorney-client privilege and the work-product doctrine.

The basis for this assertion is an indemnity contract between Hartford and PCA, requiring the former to insure the latter and its officers and employees against property-damage claims. The contract provides: "An organization other than a partnership, joint venture or limited liability company, you are an insured. Your 'executive officers' and directors are insureds, but only with respect to their duties as your officers and directors." (Doc. 82-1 at 8.) The policy also covers "employees, . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." Hartford interprets its contract to require it to assert privileges on behalf of its insureds.

1

In 2006, one of PCA's customers, Lovin Oven, made a $230,000 claim against the peanut producer for damages resulting from salmonella contamination. Under the policy, Parnell, as PCA's CEO, made a claim for coverage. (Doc. 82 at 3.) This resulted in two recorded interviews with Parnell and Kilgore. After the interviews, Hartford denied coverage. In its denial letter, a Hartford claims consultant explained that Lovin Oven had made a claim against PCA and that "Hartford must address coverage as it applies to the allegations of damages that have been made against PCA." According to the letter, after the investigation, Hartford found "there is no duty to indemnify PCA," but "[s]hould Lovin Oven file suit against PCA," PCA should provide Hartford those documents.

> A letter from Hartford to a Lovin Oven employee also explains:
>
> This letter confirms our February 21, 2007, phone conversation concerning the above-referenced claim. As I advised you, Hartford . . . has completed its review of Lovin Oven's claim and it has determined that the policy issued to Peanut Corporation of American (PCA) does not afford coverage for the current claims asserted by Lovin Oven against PCA. The Hartford has advised PCA of this position and indicated that it will need to work directly with Lovin Oven with regards to resolving this matter.

(Doc. 81-1 at 14.)

In January 2011, the grand jury subpoenaed statements and documents from Hartford concerning PCA's requests for coverage. In a second subpoena, the United States provided a privilege waiver from PCA's trustee in bankruptcy. Following a series of letters, disclosures, and revisions to Hartford's privilege log, the United States filed the instant motion seeking to compel Hartford to produce the recorded interviews with Parnell and Kilgore.

According to Hartford, "the recorded telephone conferences and the related information disclosures by Mr. Parnell and Mr. Kilgore with respect to the Lovin' Oven Claim took place in the initial stages of the presentation of the claim for coverage under

2

Hartford Fire policies." (Doc. 83-1 at 34.) Hartford's privilege log describes the various documents as, among other things, "correspondence to claims in connection with proof of loss and investigation," "internal communication pasting copy of email from S. Parnell concerning handling of Lovin Oven product," "Handwritten notes re: conversation with S. Parnell re: details of loss and procedures for preparing product," and similar variations. Nothing in the privilege log or the record describes communications with Parnell and Kilgore outside of their capacities as corporate agents.

**II. Discussion**

The Court need not decide whether the attorney-client privilege and work-product doctrine apply to the disputed recordings and documents. PCA waived its corporate privilege, and Hartford has failed to show Parnell and Kilgore had independent privileges to assert. The attorney-client and work-product privileges apply to individuals and corporations alike. *Upjohn Co. v. United States*, 449 U.S. 383, 389, 389–90 (1981). But the assertion of a corporation's privilege "presents special problems." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). The Supreme Court has recognized that a corporation, as an inanimate entity, must speak through its agents. *Id.* Therefore, "under existing law, any privilege that exists as to a corporate officer's role and functions within a corporation belongs to the corporation, not the officer." *In the Matter of Bevill, Bresler & Shulman Assett Mgmt. Corp.*, 805 F.2d 120, 124 (3d Cir. 1986) (citing *Weintraub*, 471 U.S. at 348).

It is nonetheless true that a corporate officer or employee may assert an individual privilege apart from his employer's. The Eleventh Circuit has not yet determined the contours of that privilege. Most courts to tackle the question, however, have adopted the Third Circuit's multi-factor test from *In the Matter of Bevill*, 805 F.2d at 123. *United States v. Graf*, 610 F.3d 1148 (9th Cir. 2010); *Ross v. City of Memphis*, 423 F.3d 596,

3

605 (6th Cir. 2004); *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001); *In re Grand Jury Proceedings*, 156 F.3d 1038, 1040–41 (10th Cir. 1998); *United States v. Int'l Bhd. of Teamsters*, 199 F.3d 210, 215 (2d Cir. 1997). The *Bevill* test, borrowed from the Northern District of Georgia, provides:

> *First,* they must show they approached counsel for the purpose of seeking legal advice. *Second,* they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. *Third,* they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. *Fourth,* they must prove that their conversations with counsel were confidential. And *fifth,* they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*Bevill*, 805 F.2d 120, 123, 125 (quoting *In re Grand Jury Investigation, No. 83–30557,* 575 F. Supp. 777, 780 (N.D.Ga.1983).) Another way to distinguish the corporate privilege from the personal is to ask whether the person had reasonable belief she was seeking and receiving personal legal advice. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 338 (4th Cir. 2005). Either way, the person claiming the privilege bears the burden of establishing it applies. *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003) (quoting *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir. 1991)).

This Court finds the *Bevill* approach persuasive. It is sound because it divides the officer's corporate and individual selves and ensures that the officer's personal interests do not hamstring the corporation's control of its privileges. The corporation, after all, can speak only through its officers, *Weintraub*, 471 U.S. at 348, and past officers should not to be able to prevent future management from accessing or releasing information pertinent to the company's well-being. Therefore, when the officer seeks counsel on matters related to "general affairs of the company," she is acting on behalf of the corporation, not herself.

4

Here, the record evidence shows that Parnell and Kilgore do not have personal attorney-client privileges in the claims investigation. It is doubtful whether Parnell or Kilgore could satisfy any of the elements in the *Bivell* test. There is no evidence Parnell or Kilgore approached Hartford in an individual capacity or that Hartford agreed to investigate some independent claim, despite a conflict. The claims investigation was a quintessential company matter. Lovin Oven made a claim against PCA, not Parnell and Kilgore. And Hartford admits that Parnell made the claim on behalf of PCA. The denial letter states that Hartford has "no obligation to indemnify PCA," but "[s]hould Lovin Oven file suit against PCA," Hartford will further review the matter. (Doc. 82-2.) Throughout all of the exhibits, the Hartford consistently refers to its obligation to PCA. PCA is always the operative party. Nothing in the privilege log or the various exhibits the Parties have submitted suggest Parnell or Kilgore approached Hartford in anything but representative capacities.

Additionally, Hartford has not provided any evidence that Parnell and Kilgore reasonably believed the insurer would indemnify them in an individual capacity. To the contrary, the record evidence shows it would have been unreasonable to make such an assumption. Parnell approached Hartford as the PCA CEO. Lovin Oven made a claim against PCA, not Parnell or Kilgore. Moreover, the insurance policy covered Parnell and Kilgore only insofar as their actions fell within their corporate duties. Their coverage was merely incidental to PCA's policy.

The same analysis carries over to the work-product doctrine. To the extent Hartford and Parnell and Kilgore prepared any materials in anticipation of litigation, they prepared those materials for the benefit of PCA. The privilege therefore belongs to PCA. *See In re Grand Jury Subpoena*, 274 F.3d 563, 574 (1st Cir. 2001). Hartford has not submitted contrary evidence.

Harford nevertheless argues this situation is different from *Bevill* line of cases because the insurance contract also covered Parnell and Kilgore, so "they are entitled to individual legal representation" and, because of that, ought to have personal privileges. (Doc. 82 at 12.) This is unpersuasive. The insurance contract again reinforces the Court's conclusion. It specifically states that executive officers and directors are insured "only with respect to their duties as . . . officers or directors." (Doc. 82-1.) In other words, the contract insured them only as the corporation's representatives. As far as the insurer was concerned, Parnell's and Kilgore's problems regarding the Lovin Oven claim were identical to the corporation's.

It is always possible for person to sue a corporate officer for the exercise of her corporate responsibilities. That Parnell and Kilgore faced a potential lawsuit in their official capacities does not distinguish their situation from the general rule. This entire area of jurisprudence often involves an officer in that same situation. *See Graf*, 610 F.3d at 1161–62. But allowing corporate officers to veto the corporation's waiver of privilege simply because a plaintiff could name them in the suit as the corporation's agent would gut the *Weintraub* doctrine. The corporation could never control its privileges because it can act only through an officer. That officer in turn would always claim she had a personal interest in the corporation's litigation. But generally speaking, most employment contracts and state laws insulate corporate officers in their representative capacities from personal liability in third-party claims, so long as they act in good faith for the corporation's best interests.

As an aside, the Court further notes that the attorney-client privilege is particularly ill-suited for these circumstances. The privilege "should be construed as narrowly as is consistent with its purpose." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987) (citation omitted). And its purpose is to "encourage[] full and frank communica-

6

tion between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). A corporate officer, unlike the ordinary prospective client, has no choice but to provide full and frank communication when making an insurance claim. *See, e.g.,* O.C.G.A. § 33-1-9 (providing criminal penalties for insurance fraud). And a contrary ruling would diminish the attorney-client role—an officer who appears both as an individual and an agent on a purely corporate matter could forever divide the attorney's interest should a conflict between the two positions arise. The Court declines to encourage a relationship that allows the officer to bind and gag his former employer in that manner.

For those reasons, the Court concludes that Hartford has not satisfied its burden of showing that Parnell and Kilgore have independent privileges over the disputed materials.

### III. Conclusion

The Government's motion to compel (Doc. 81) is **GRANTED**. Hartford is **ORDERED** to produce to the Government the contested recordings and documents within **fourteen (14) days** from the entry of this Order.

**SO ORDERED**, this  2nd  day of August 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**